No. 20,052.

BESSIE HIBBARD, a minor, etc., *Appellee,* v. THE CITY OF WICHITA, *Appellant.*

SYLLABUS BY THE COURT.

MUNICIPAL CORPORATIONS — *Performance of Governmental Function— Public Parks — Zoölogical Garden — No Actionable Negligence.* The maintenance of a zoölogical garden in a public park by a city is a governmental function, and the city is not liable in damages for injuries inflicted on visitors by animals through the negligence of the city's officers or agents in not properly confining the animals.

Appeal from Sedgwick district court, division No. 1; THOMAS C. WILSON, judge. Opinion filed July 8, 1916. Reversed.

*James A. Conly,* city attorney, and *Earl Blake,* of Wichita, for the appellant; *J. A. Brubacher, W. A. Ayres,* and *C. A. McCorkle,* all of Wichita, of counsel.

*Benjamin F. Hegler, Claude C. Stanley,* and *Fred Stanley,* all of Wichita, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: In this action the plaintiff seeks to recover damages for an injury sustained by being bitten by a coyote in the defendant's park. The plaintiff recovered judgment. The defendant appeals.

The defendant maintained a public park in which were located a number of buildings, where wild animals were kept. Three coyotes were there confined in a cage constructed of heavy wire of two-inch mesh, built on a cement foundation, about two feet from the ground. Mrs. Hibbard, mother of the plaintiff, drove to the park with a neighbor, and upon her arrival there proceeded to prepare a lunch, permitting the plaintiff, a child of four years, and an eleven-year-old daughter, together with an eleven-year-old boy of the neighbor, to wander over the park and to the animal cages some two or three hundred feet way. After the children had gone into the zoölogical part of the park the plaintiff wandered away from her sister and the neighbor boy, and, with a man by the name of Tully Myers and his children, one in his arms, went up to the cage contain-

ing the coyotes. While watching these animals, and while Mr. Myers was adjusting the hat of the child in his arms, the plaintiff approached the cage and put her hand and arm on the wires of the cage. Her hand and arm were seized by one of the coyotes and scratched and bitten. One large wound on the forearm and numerous small ones were made by the claws and teeth of the coyote. Claim was filed against the city within four months. Action was brought resulting in a judgment against the city for $500.

The city sets up contributory negligence on the part of the plaintiff, her parents, and Mr. Myers, and contends that in the maintenance of the park and zoo it was acting in the exercise of a purely governmental function and is not liable for the negligence of those in charge of the animals.

The question that determines the judgment that must be rendered in this case is, Was the city acting in the exercise of a purely governmental function and therefore not liable for the negligence of any of its officers or agents in the care and maintenance of the park and zoölogical garden? In *Harper v. City of Topeka*, 92 Kan. 11, 139 Pac. 1018, it was said:

"The maintenance of a park by a city for the sole benefit of the public, and not for any profit or benefit to the municipal corporation, is a governmental or public function." (Syl. ¶ 1.)

Zoölogical gardens are commonly maintained in parks as a part thereof, under the same authority and for the same reasons that parks are maintained. The same liability should attach to keeping a zoölogical garden as attaches to the maintenance of a park. No profit is ordinarily received from such gardens. In the present case it does not appear that the defendant city received any profit whatever from its zoölogical garden. It was kept for the pleasure and education of the entire public. Is the city liable for negligence in the manner in which the coyotes were confined and kept? In *Freeman v. Chanute*, 63 Kan. 573, 577, 66 Pac. 647, is the following quotation from Throop on Public Officers:

"With respect to cities, and other municipal corporations, the general rule is, that the body is liable for the acts or omissions of its officers in the lawful discharge of a corporate duty, imposed by law upon the body itself; but not where the act is for the general public interest, or

where the statute specifically imposes the duty upon the officers." (§ 551.)

In *Harper v. City of Topeka,* supra, this court said:

"Ordinarily, cities and other municipal corporations in the exercise of their governmental functions are not liable in damages for any neglect, or even wrong-doing, of their officers in the, discharge of such duties unless such liability is expressly imposed upon them by law." (p. 13. See, also, the cases there cited.)

In *Butler v. Kansas City,* 97 Kan. 239, 155 Pac. 12, we declared:

"It is a general rule that the governmental agencies of the state are not liable in an action of tort for either nonfeasance or misfeasance." (p. 241.)

This rule has been applied in actions for false imprisonment by city officers (*Peters v. City of Lindsborg,* 40 Kan. 654, 20 Pac. 490; *City of Caldwell v. Prunelle,* 57 Kan. 511, 46 Pac. 949) ; and in actions for damages sustained by reason of the defective condition of the prison in which the person injured was confined, or by reason of the negligence of the officers in charge of the prison (*La Clef v. City of Concordia,* 41 Kan. 323, 21 Pac. 272; *City of New Kiowa v. Craven,* 46 Kan. 114, 26 Pac. 426). In *Harper v. City of Topeka,* 92 Kan. 11, 139 Pac. 1018, this court held a city not liable for the death of a boy drowned by breaking through the ice while skating on a pond in a park. The city stationed no watchman and did nothing to prevent children from going on the ice at any time. In *Butler v. Kansas City,* supra, the city was held not liable for injuries sustained by an inmate of a pesthouse by a splinter from the floor penetrating his foot while he was walking from his bed to a stove to make a fire. In that case it was admitted by demurrer that the city was negligent in maintaining the floor of the room in a defective and dangerous condition. Following these authorities, there is but one conclusion to be reached in the present case, and that is that the defendant was acting in a governmental capacity; and that it is not liable for the negligence of its officers or agents in confining the animals in the zoo.

*Bowden v. Kansas City,* 69 Kan. 587, 77 Pac. 573, is cited in support of the contention of the plaintiff. In the Harper case this court said (p. 16) that the real principle involved in the

Hibbard v. City of Wichita.

Bowden case was the relation of employer and employee. There is no such relation involved in the present case.

A number of states follow a principle contrary to the one that has been followed in this state, so far as negligence in the maintenance of parks is concerned; while a number of other states adhere to the rule declared in this state. A collation of these authorities at this time will not serve any good purpose. The rule herein announced is firmly fixed in our jurisprudence and must be followed, unless distinctly overruled.

There seems to be an inconsistency between the rule we now declare, and that holding cities liable for negligence in the maintenance of its streets. In the Harper case after stating that cities in the exercise of their governmental functions are not liable for any neglect or wrong-doing of their officers in the discharge of such duties, unless such liability is expressly imposed by law, this court said:

"An exception to the rule has been made which holds cities liable for damages resulting from defects in their highways." (p. 13.)

McQuillin on Municipal Corporations, in discussing the liability of cities for negligence in the maintenance of streets and sidewalks, says:

"This rule is said to be founded upon an 'illogical exception' to the general rule of the common law prohibiting actions against municipalities for negligence in the discharge of duties imposed upon them for the sole benefit of the public and from which they derive no compensation or benefit in their corporate capacity." (Vol. 6, § 2720, p. 5590.)

The defendant city is not liable. The judgment is reversed, and the trial court is directed to enter judgment for the defendant.

WEST, J. (dissenting): The coyote cage was a most malignant and excuseless attractive nuisance. While the maintenance of a public park may be a governmental function, still, as we said in *Murphy v. Fairmount Township,* 89 Kan. 760, 133 Pac. 169, quoting from the Iowa supreme court:

" 'The creation and maintenance of a nuisance is very clearly not a governmental function, and the authorities are practically of one voice on the subject.' (*Frances v. Town of Sharon,* 143 Iowa, 730, 732, 121 N. W. 523.)" (p. 765.)

The maintenance of a public park does not imply and should not include the provision of man-eating specimens of zoölogy to dine upon the children of those who visit such park. The foregoing opinion is in conflict with *Kansas City v. Siese,* 71 Kan. 283, 80 Pac. 626, that portion of the opinion in *Harper v. City of Topeka,* 92 Kan. 11, 139 Pac. 1018, found on page 14, the doctrine of *Murphy v. Fairmount Township,* 89 Kan. 760, 133 Pac. 169, *Roman v. City of Leavenworth,* 90 Kan. 379, 133 Pac. 551, and *Roman v. City of Leavenworth,* 95 Kan. 513, 148 Pac. 746. I am entirely satisfied with these decisions and do not believe they should be overturned or departed from.